IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LAJUAN F. MARTIN,** *pro se* | * | |
| **and WINSTON MARTIN HOLDING** | * | |
| **GROUP, LLC** | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No. **PJM 16-4140** |
| | * | |
| **FREDDIE L. WINSTON, JR. and** | * | |
| **9620 INVESTMENTS, LLC** | * | |
| | * | |
| Defendants | * | |

### MEMORANDUM OPINION

*Pro se* Plaintiff Lajuan F. Martin and Plaintiff Winston Martin Holding Group, LLC ("WMHG"), the latter is represented by counsel, have brought suit against Defendants Freddie L. Winston, Jr. and 9620 Investment, LLC ("9260"), asking the Court to quiet title on a commercial property located at 9620 Lottsford Road in Largo, Maryland, ("the Property") and alleging that Defendants committed the torts of Slander of Title and Tortious Interference with Economic Relations.

Both parties have filed Motions for Summary Judgment. For the reasons that follow, the Court **DENIES** Plaintiffs' Motion for Summary Judgment, ECF No. 2, and **GRANTS** Defendants' Motion for Summary Judgment. ECF No. 15.

I.  **Factual and Procedural Background**

Martin and Winston each owned fifty percent interest in WMHG, a limited liability company ("LLC") established in the District of Columbia in 2006. ECF No. 2-1 at 4. The entity was administratively dissolved as of January 1, 2015 for failing to file a biennial report. ECF No. 21 at n.1.

WMHG was established to develop commercial property. ECF No. 2-1 at 4. To that end, it acquired the Property in fee simple and recorded the deed in the land records of Prince George's County. ECF No. 2-1 at 4. Before 2009, no improvements were made on the land, a vacant lot, but in 2009 Martin obtained approvals for a site development plan from the Maryland-National Capital Parks and Planning Commission, which significantly increased the value of the land. ECF No. 2-1 at 4. The Property was intended to be developed as the site for a restaurant.

Since then, the Property has been the subject of a substantial amount of litigation, mostly in state court, in both Maryland and the District of Columbia.

a. *Fenwick Litigation*

Jason Fenwick, as a creditor of WMHG, obtained a judgment lien against the Property. ECF No. 2-1 ¶ 4. Fenwick subsequently foreclosed on the Property, then purchased it himself at an execution sale on May 15, 2009. ECF No. 2-1 at 4. Fenwick's purchase was ratified by the Circuit Court for Prince George's County on May 19, 2009. ECF No. 1 ¶ 12. WMHG, apparently with the participation of both of its owners, appealed that ratification, which was stayed by the Maryland Court of Appeals. ECF No. 1 ¶ 12. WMHG also filed a separate lawsuit in state court seeking a declaratory judgment that it owned the land. ECF No. 1 ¶ 13.

After considering a consolidated appeal of both these cases, the Court of Special Appeals set aside Fenwick's sheriff's deed on August 11, 2016. ECF No. 20-2 at 5.

  b. *Inglewood Litigation*

The Inglewood Restaurant Park Association, Inc. ("Inglewood"), an association formed by the other businesses in the business park where the Property was located, obtained a lien in the amount of $30,060.60, against the Property for non-payment of fees. ECF No. 5-1 at 3. On July 18, 2011, Inglewood then filed an Amended Order to Docket Foreclosure in the Circuit Court for Prince George's County ("foreclosure case"). ECF No. 15-2 at 3. The Circuit Court denied WMHG's motion to stay the proceeding pending the outcome of the Fenwick litigation and the foreclosure sale took place on October 17, 2011. ECF No. 15-2 at 3. Winston, one of the Defendants herein, purchased the property at the foreclosure sale on his own behalf. ECF No. 15-2 at 3. After considering objections, Judge Thomas P. Smith of the Circuit Court for Prince George's County ratified the sale on January 16, 2014. ECF No. 15-2 at 8. Martin, one of the Plaintiff's herein, filed an appeal of that ratification, which the Court of Special Appeals dismissed with prejudice and as to which the Court of Appeals denied certiorari. ECF No. 1 ¶ 29. Winston subsequently conveyed his interest in the Property to 9620 Investments, LLC ("9620"), a limited liability corporation he owns, Winston's Co-Defendant in this lawsuit. ECF No. 2-1 ¶ 7.

The story doesn't end there.

Martin separately sued Winston *in personam* in the Circuit Court for Prince George's County, seeking among other things to quiet title on the Property in his favor. *Martin v. Winston*, No. 0915 SEPT.TERM 2015, 2016 WL 4261097, at *3 (Md. Ct. Spec. App. Aug. 11, 2016). The Circuit Court for Prince George's County directed Martin to obtain leave of the Court before

filing any additional pleadings and subsequently dismissed his Complaint. ECF No. 15-2 at 15. The Court of Special Appeals reversed the dismissal and remanded the case back to the Circuit Court for further proceedings, where it is apparently still pending. *Martin v. Winston,* 2016 WL 4261097, at *3.

   c. *Current Litigation*

The Complaint in this case, filed on December 30, 2016, alleges three causes of action. ECF No. 1. In Count One, Plaintiffs Martin and WMHG ask the Court quiet title in their favor as against Winston and 9620. ECF No. 1 ¶¶ 38 – 42. Plaintiffs argue that Inglewood's lien only had the effect of securing Fenwick's interest in the Property, so when the Court of Special Appeals set aside Fenwick's deed, Inglewood's lien was also set aside. Inglewood's foreclosure, say Plaintiffs, was therefore improper and it is WMHG that holds clear title to the Property.

In Count Two Plaintiffs seek damages for Slander of Title, arguing that Defendant Winston's claim to the Property was a "malicious communication" that prevented WMHG from obtaining financing to develop the property." ECF No. 1 ¶¶ 43-47. In Count Three, Plaintiffs ask for damages for Tortious Interference with Economic Relations, averring that Winston's claim to the land interfered with Plaintiffs' efforts to obtain financing to develop the land. ECF No. 1 ¶¶ 51-53.

Plaintiffs filed a Motion for Summary Judgment concurrently with the filing of their Complaint. ECF No. 2. Defendants subsequently filed their own Motion for Summary Judgment and Opposition to Plaintiffs Motion for Summary Judgment, ECF No 15, to which Plaintiffs responded on March 15, 2017. ECF No. 20.

## II.    Analysis

Before addressing the merits of parties' Motions for Summary Judgment, the Court

considers whether it has jurisdiction over the case and whether all the parties are properly before it.  The Court will then proceed to decide whether any issue of material fact remains as to the ownership of the Property.

The Court holds that it is precluded from reconsidering the judgment of the Circuit Court for Prince George's County that Winston had legal title to Property capable of being conveyed to 9620. Accordingly, it will **DENY** Plaintiffs' Motion for Summary Judgment and **GRANT** Defendants' Motion for Summary Judgment.

   a. *Subject Matter Jurisdiction*

Defendants claim that the Court lacks subject matter jurisdiction over the case. The Court disagrees. Federal courts have jurisdiction over actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332 (a)(1).

In this case, there is no dispute that the amount in controversy reaches the applicable threshold.

Defendants instead argue that parties are not diverse because they are all based in Maryland and that, "at all times relevant to the allegations," ECF No. 15-1 at 6, Martin was a resident of Maryland. However, "[d]iversity jurisdiction is determined as of the date the suit is filed." *Gardner v. AMF Bowling Ctrs., Inc.*, 271 F. Supp. 2d 732, 733 (D. Md. 2003). As of the date of the filing of the suit, Martin represented that he was a resident of the District of Columbia, a contention he fortified by submitting a copy of his District of Columbia driver's license to the Court, which listed a District of Columbia address and which was issued on June 21, 2016, six months before the current suit was filed. ECF No. 2-1 at 1.

The Court therefore finds that parties are diverse and that it has subject matter

jurisdiction.

  b. *Authority to Represent WMHC*

Defendants also aver that Martin lacks authority to sue on behalf of WMHC. Since Winston and Martin, they argue, are each fifty percent owners of WMHC, neither can represent or act on behalf of the entity without the other's consent. Martin contends that while that may have been true during the active life of the entity, he, as an owner, can take unilateral action to wind up its activities after it was dissolved, including prosecuting the present action. The Court agrees with Martin.

WMHC was administratively dissolved pursuant to the D.C. Code for failure to file a biennial report. ECF No. 2-1, n.2. District of Columbia law provides that domestic filing entities that are administratively dissolved "shall not carry on any activities or affairs except as necessary to wind up its activities and affairs and liquidate its assets in the manner provided in its organic law." D.C. Code § 29-106.02(c).

A dissolved LLC may "preserve the company activities and affairs and property as a going concern for a reasonable time" and "prosecute and defend actions and proceedings, whether civil, criminal, or administrative" in winding up its activities and affairs. D.C. Code § 29-807.02(b)(2)(A), (B); *see also Downey v. Ambassador Dev., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008) (explaining that, under the District of Columbia Limited Liability Companies Act, D.C. Code § 29-1050, the person winding up the LLC's affairs may, "in the name of, and for and on behalf of, the limited liability company, prosecute and defend suits").

The D.C. Code addresses who may wind up the activities and affairs in the event that a dissolved LLC has no members, D.C. Code § 29-807.02(c), but does not indicate whether one member of an LLC may participate in the wind up process without the consent of another

member. That is often determined by the operating agreement of the LLC, but in the absence of a statute or a provision in the operating agreement stating otherwise, a LLC can be wound up by the members or managers who participated in the company's business before dissolution. J. William Callison & Maureen A. Sullivan, Limited Liability Companies § 10:3 (2016).

In this case, neither party has provided the Court with the relevant Operating Agreement, if indeed any exists, so the record is inconclusive as to whether, on the basis of the Agreement, Martin can prosecute or is precluded from prosecuting the case on WMHC's behalf. However, since summary judgment will be granted in favor of Winston and 9260 and against Martin and WMHC in any case, the Court will assume without deciding that Martin has authority to unilaterally act for WMHC actions for the purposes of this action.

   c. *Summary Judgment*

Both parties have moved for summary judgment. Summary judgment will be granted where "there is no genuine issue of material fact that could lead a trier of fact to find for the non-moving party." *Willingham v. Crooke*, 40 F. App'x 850, 851 (4th Cir. 2002). The party opposing the motion is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts resolved favorably to him." *Id.* (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).   However, "such a motion cannot be denied unless the non-moving party puts forth specific facts evidencing that such a genuine issue *does* exist." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 951 (4th Cir. 1995).

At the heart of this case is the question of who holds title to the Property. All three causes of action – the action to quiet title, the action for slander of title, and the action for tortious interference hinge on which party had legal ownership. Were the Court to find that Plaintiffs

have legal title, for example, they would in all likelihood prevail on the action to quiet title and quite possibly as to the tort action as well. If, in contrast, the Court finds that Defendants have title to the Property, all of the Plaintiffs' claims are extinguished.

Ownership of the Property depends on whether Inglewood, as creditor of WMHG, had a valid lien on the Property on which it was entitled to foreclose. Defendants claim that it did and that in consequence Winston properly acquired title by way of the foreclosure pursuant to that lien, which he then conveyed to 9620. In contrast, Plaintiffs argue that Inglewood's lien was in some way related to the deed to Fenwick, which the Court of Special Appeals set aside. At that point, say Plaintiffs, Inglewood's lien was extinguished and its foreclosure voided. Consequently, Plaintiffs claim that they have clear title to the Property.

Judge Smith, for the Circuit Court for Prince George's County, squarely confronted and decided this issue in the foreclosure case, holding that Inglewood had a valid lien, and was entitled to foreclose, eventually awarding Winston legal title to the Property. ECF No. 15-2. *Inglewood Test. Park Ass'n v. Winton Martin Holding Group, LLC,* No. CAE 11-02632 (Md. Cir. Ct. Jan. 16, 2014). The result: issue preclusion prevents this Court for reconsidering the state court's finding.

Issue preclusion "refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748–49(2001). "[T]he law of the state in which the judgment was rendered determines the preclusive effect" of a state court judgment. *Anne Arundel Cty. Bd. of Educ. v. Norville*, 390 Md. 93, 108, 887 A.2d 1029, 1037 (2005).

In Maryland, to determine whether issue preclusion is appropriate, courts employ a four-

factor test: "(1)Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? [and] (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue*?" SPS Ltd. P'ship, LLLP v. Sparrows Point, LLC*, 122 F. Supp. 3d 239, 243 (D. Md. 2015) (quoting *Shader v. Hampton Imp. Ass'n,* 217 Md.App. 581, 94 A.3d 224, 238) (Md. Ct. Spec. App. 2014) (internal citations omitted).

With respect to the first factor, the key issue here – whether Inglewood was entitled to foreclose, and consequently who holds legal title to the Property – is identical to the issue decided in the foreclosure case. After considering WMHC's objections in the foreclosure action, which were in large part identical to the allegations that it makes in the present litigation, Judge Smith held that he "[could] not find any timely meritorious factual or legal objection that precludes ratification of the sale" to Winston, ECF No. 15-2 at 7; *Inglewood Rest. Park Ass's v. Winton Martin Holding Grp., LLC,* No. CAE 11-02632 (Md. Cir. Ct. Jan. 16, 2014).

The foreclosure case represented a final judgment on the merits with respect to this issue, which Plaintiffs in fact concede in their Complaint, to wit: "Martin appealed the January 16, 2014 order of ratification…[w]ithout comment, the appellate court dismissed the appeal with prejudiced [sic] as moot. Martin's petition for a writ of certiorari seeking clarification, which was opposed by Winston, was denied."[1] ECF No. 1 ¶ 29. Exhaustion of appeals constitutes a final judgment. *See Campbell v. Lake Hallowell Homeowners Ass'n,* 157 Md. App. 504, 524, 852

---

[1] In their Reply, Plaintiffs argue that there is not a final judgment on this matter. To support this, they cite a recent Court of Special Appeals ruling in CAE 14-2960, *Martin v. Winston*, where that court reversed the Circuit Court of Prince George's County and remanded the case to the Circuit Court for Prince George's County. *Martin v. Winston*, No. 0915 SEPT.TERM 2015, 2016 WL 4261097, at *8 (Md. Ct. Spec. App. Aug. 11, 2016). Plaintiffs' argument is inapt because that litigation did not reopen the foreclosure case.

A.2d 1029, 1040 (2004); Restatement (Second) of Judgments § 13(g) (1982) ("That the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.")

The parties here are also identical or were in privity with those in the foreclosure case. WMHC was a named defendant in the foreclosure suit. *See* ECF No. 15-2 at 2 ("Out of an abundance of caution, Plaintiff [Inglewood] joined both Winston Martin and Fenwick as defendants at the onset of this litigation until its conclusion."). In addition, it is undisputed that Martin was a member WMHC, and, members of an LLC are in privity with the entity. *See Sams v. Jane G. Henderson, LLC*, No. 518, SEPT.TERM, 2015, 2017 WL 1231702, at *3 (Md. Ct. Spec. App. Apr. 4, 2017).

Finally, Plaintiffs had more than a fair opportunity – of which they most definitely availed themselves – to raise issues with respect to the ownership of the Property during the foreclosure case. Indeed, WMHC raised many of the same arguments in that proceeding as it (and Martin) raise in this case. Judge Smith held that "at all times during these proceedings, [title] has either been vested in Winston Martin or Fenwick, both of whom were joined as parties to the foreclosure proceedings," ECF No. 15-2 at 6; that, in any case, "the lien that was foreclosed upon attached to the real property, regardless of who held legal title at any particular time," *id.;* and that WMHC waived many of its arguments as to propriety of Inglewood's lien by not raising them before the foreclosure sale. *Id.* After considering these arguments, the Court ratified the sale to Winston.

In sum, the judgment of the Circuit Court of Prince George's County – that Winston is holder of legal title to the Property – meets the qualifications for issue preclusion and the Court

is not permitted to revisit that judgment.

This conclusion is fatal to all three of the causes of action in the present case.

With respect to the claim to quiet title, in Maryland, "it is well-established that a quiet title action 'cannot, as a general rule, be maintained without clear proof of both possession and legal title in the plaintiff.'" *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Stewart v. May,* 111 Md. 162, 73 A. 460, 463–64 (1909)). It is the Plaintiffs' burden to establish legal title. *Id.* Because the Circuit Court for Prince George's County found that Winston had legal title to the Property, which he subsequently conveyed to 9260, Plaintiffs cannot establish that they have legal title and their action to quiet title fails.

To prevail in a cause of action for slander of title in Maryland, a plaintiff must "establish that the defendant, with malice, published a known falsity to a third party that caused special damages." *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 518–19 (D. Md. 2016) (*quoting Gibbons v. Bank of Am. Corp.*, Civ. No. JFM–08–3511, 2012 WL 94569, at *10 (D. Md. Jan. 11, 2012). Plaintiffs allege that Winston's recording of his deed, and his filing with the Maryland Department of Assessments and Taxation that claimed ownership of the Property constitute the requisite publishing. ECF No. 2-1 at 14. However, since the foreclosure proceeding determined that Winston was indeed entitled to legal title of the Property, Winston's actions constituted publishing of <u>true</u>, not false, information. As a result, the cause of action for slander of title fails.

Finally, Plaintiffs' claim for tortious interference with economic relations also fails. To prevail on such a claim, "a plaintiff must demonstrate (1) an intentional and willful act on the part of the defendant; (2) calculated to cause damage to the plaintiff in plaintiff's economic relations; (3) done with an unlawful purpose, without right or justification (which constitutes malice); and (4) resulting in actual damage and loss to the plaintiff." *Goode v. Am. Veterans,*

*Inc.*, 874 F. Supp. 2d 430, 447 (D. Md. 2012) (citing *Blondell v. Littlepage,* 413 Md. 96, 991 A.2d 80, 97 (2010)). The conduct at issue must be "independently wrongful or unlawful," such as a common law tort, violence, intimidation, defamation, or violations of criminal law. *Goode*, 874 F. Supp. 2d at 447. None of these elements obtain here. Claiming and recording title to property acquired in a foreclosure sale, ratified by a court and affirmed by an appellate court is not "wrongful or unlawful."

Since no issue of material fact remains as to any of Plaintiffs' three causes of action, summary judgment in favor of Defendants and against Plaintiffs is proper.

## VI.

Conclusion

For the foregoing reasons:

Plaintiffs' Motion for Summary Judgment, ECF No. 2, is **DENIED.**

Defendants' Motion for Summary Judgment, ECF No. 15, is **GRANTED.**

A separate Order will **ISSUE**.


　　　　　　　　　　　　　　　　　　／s／　　　　　　　　　
　　　　　　　　　　　　　　**PETER J. MESSITTE**
　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

**July 24 , 2017**